1  Sophia M. Rios (SBN 305801)
   BERGER MONTAGUE PC
2  401 B Street, Suite 2000
   San Diego, CA 92101
3  Tel: (619) 489-0300
4  Fax: (215) 875-4604
   srios@bm.net
5
   [Additional Counsel Appear on Signature Page]
6
7  *Attorneys for Plaintiff and the Proposed Class*

8

9

10                     UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12 | PAULA SPARKMAN, on behalf of herself | Case No. 3:23-cv-02028
   | and all others similarly situated, |
13 |                                      |
   |              Plaintiff,              | **CLASS ACTION COMPLAINT**
14 |                                      |
   |         v.                           | **DEMAND FOR JURY TRIAL**
15 |                                      |
16 | COMERICA BANK, a foreign corporation,|
   | CONDUENT BUSINESS SERVICES, LLC, a   |
17 | foreign limited liability corporation,|
18 |             Defendants.              |

19

20

21

22

23

24

25

26

27

28

## I.  NATURE OF ACTION

1. Plaintiff Paula Sparkman is a single mother who relies on the child support funds she receives through California's "Way2Go Card" program to care for her daughter. The Way2Go Card is a prepaid debit card issued by Defendants Comerica Bank and Conduent Business Services. When Ms. Sparkman's card was stolen and a series of unauthorized charges drained more than a $1,000 from her account, Defendants refused to help.

2. Defendants Comerica Bank and Conduent Business Services are required by federal law to return funds taken from a consumer in unauthorized transactions. Defendants also promised that "Mastercard's Zero Liability Protection assures you do not lose any funds if your Card is lost or stolen."

3. When Ms. Sparkman promptly reported her card stolen, Defendants denied her claim because they "could not confirm the fraud occurred" and claimed to have received "conflicting information." Defendants have not credited any of the stolen funds back to Ms. Sparkman's account.

4. Ms. Sparkman brings this action on behalf of herself and other Californians who have reported unauthorized transactions but have not received those funds back because Defendants could not confirm the fraud occurred based on shoddy investigation practices and failure to communicate effectively with account holders who dispute unauthorized charges.

## II.  JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1693m(g) because Ms. Sparkman's Electronic Funds Transfer Act Claim arises under federal law.

6. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to resolve Ms. Sparkman's claims arising under California law for breach contract and statutory violations.

7. This is the proper venue because a substantial part of the events or omissions giving rise to Ms. Sparkman's and the Class's claims occurred in this district. 28 U.S.C. § 1391(b)(2). Defendant Comerica Bank also operates numerous branches within this district.

III. **PARTIES**

8. Plaintiff Paula Sparkman is a natural person domiciled in Tehama County, California.

9. Defendant Comerica Bank is a Texas state chartered commercial bank with its corporate headquarters in Dallas, Texas.

10. Defendant Conduent Business Services, LLC is a Delaware limited liability corporation with its corporate headquarters in Florham Park, New Jersey.

IV. **FACTUAL ALLEGATIONS**

11. Paula Sparkman is a single mother who lives with her daughter in Red Bluff, California.

12. All child support payments in California are made through California Child Support Services. California Child Support Services contracts with Defendants to disburse child support payments to recipients through prepaid debit cards.

13. Ms. Sparkman receives court ordered child support from her child's father through California's Way2Go Card® Prepaid Mastercard.® Ms. Sparkman has had a Way2Go Card since approximately 2020 when California Child Support Services contracted with Defendants to issue payments by prepaid debit card. Ms. Sparkman has used a prepaid debit card to access child support funds since 2015.

14. Defendants' Way2Go Card informational sheet promises: "Mastercard's Zero Liability Protection assures you do not lose any funds if your Card is lost or stolen."

15. Defendants' Terms of Use also say that if the account holder notifies Defendants within two business days after learning that a card was lost or stolen, a PIN was compromised, or unauthorized transactions were made then "you can lose no more than $50."

16. Defendants' Terms of Use further provide that if the account holder notifies Defendants more than two days after learning of the loss, theft, or unauthorized use of the account holder's Way2Go Card, and Defendants can show that they could have stopped the unauthorized transactions if they had been informed sooner, then the account holder "could lose as much as $500," but not more.

CASE NO.

17. Defendants' Terms of Use further provide that the account holder "will not be responsible for unauthorized use of your Card."

18. On November 29 or 30, 2022, Ms. Sparkman's Way2Go Card was stolen out of her parked car.

19. Ms. Sparkman called the Way2Go Card Program on December 1, 2022, and reported the card stolen. Defendants assigned Ms. Sparkman's claim the following Tracking ID: 1-6950303458. Defendants' agent told Ms. Sparkman that Defendants could not stop the unauthorized charges from going through and that Ms. Sparkman could not dispute the fraudulent charges until they went through.

20. Defendants issued Ms. Sparkman a replacement Way2Go Card within 5-7 days after she reported her card stolen.

21. Defendants' agent told Ms. Sparkman would receive paperwork to dispute the unauthorized transactions within ten days. She never received the paperwork.

22. Ms. Sparkman followed up with Defendants by phone many times, including on December 9, 2022, when Defendants directed her to hand write out the list of charges she disputed.

23. On approximately December 13, 2022, Ms. Sparkman emailed to Defendants a handwritten list of 21 disputed charges made using her card on November 30 and December 1, 2022. The charges total more than $1,000. She sent a photo of the handwritten list via email as directed by one of Defendants' agents.

24. The unauthorized charges on Ms. Sparkman's account were made without entry of a PIN. They were instead processed as credit transactions with a signature.

25. Ms. Sparkman always uses her PIN to make purchases with her Way2Go Card. She never signs for charges on the card.

26. Ms. Sparkman filed a police report with the Red Bluff Police Department reporting the stolen card and fraudulent charges.

27. Ms. Sparkman received no paperwork from Defendants until after she made repeated follow up calls and was eventually told that Defendants had already denied her claim for reimbursement of the disputed charges.

28. On approximately January 5, 2023, Defendants mailed Ms. Sparkman a packet of information that included reprinted copies of letters dated December 1, 2022 and December 14, 2022. Ms. Sparkman had not previously received either letter from Defendants.

29. Defendants' letter dated December 1, 2022 acknowledged receipt of Ms. Sparkman's complaint the same date. Defendants' other records confirm that Defendants opened her dispute claim on December 1, 2022, the day after she discovered the card was stolen.

30. Defendants' letter to Ms. Sparkman dated December 14, 2022, is on letterhead from the Go Program Fraud Services Department. The letter denies Ms. Sparkman's claim for reimbursement for the unauthorized transactions. The letter states the following grounds for the denial (1) "we found a conflict in the information provided by you and the information resulting from our research"; and (2) "we cannot confirm that fraud occurred."

31. The December 14 letter appears to be form letter and includes in the lower left corner the following identifying code: "FRD7-GO-v01."

32. Ms. Sparkman continued to follow up with Defendants by phone and email, including by submitting an appeal of Defendants' decision not to reimburse the stolen funds. Defendants have not credited the stolen funds to Ms. Sparkman's account.

33. Ms. Sparkman was shocked and upset to learn that Defendants did not promptly cancel the pending transactions or credit her account after she reported her card stolen. Without the missing funds, Ms. Sparkman could not afford to host her daughter's birthday party—despite invitations already having been sent before the theft. Ms. Sparkman was also unable to purchase a Christmas tree or many gifts. She has suffered anxiety, humiliation, and worry as a result of Defendants' conduct.

34. Despite their obligation under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq*., to promptly credit Ms. Sparkman's account, and their contractual

promises that she would not lose money or would lose only a small amount if her card was stolen, Defendants refused to credit the amounts of the stolen funds.

## V. CLASS ALLEGATIONS

35. Ms. Sparkman brings this case as a proposed class action under Federal Rule of Civil Procedure 23. The proposed Class and Sub-Class are defined as follows:

> **Class**: All persons issued a California Way2Go Card® Prepaid Mastercard® who (1) notified Defendants that one or more charges on their account were unauthorized or disputed; and (2) were denied reimbursement on the grounds that Defendants (i) could not confirm fraud occurred; or (ii) found a conflict in information provided during an investigation, through the date of any class certification order in this action.

> **EFTA Sub-Class**: All persons in the Class who (1) were denied on or after April 27, 2022 through the date of any class certification order in this action and (2) whose denial was with regard to a disputed charge (or charges) totaling more than $50.

36. Plaintiff reserves the right to amend or modify the proposed class and sub-class definitions or add other proposed subclasses based on information obtained after the filing of this Complaint.

37. **Numerosity** under Federal Rule 23(a)(1) is satisfied.

38. There are at least thousands of Californians who receive payments on California Way2Go Cards issued by Defendants.

39. Unauthorized charges resulting from theft, loss of cards, and fraud is common and Defendants' standard practices for investigating and denying reimbursement of funds to fraud victims therefore injured at least 40 other people. As a result, the class is sufficiently numerous that joinder of all members is impracticable.

40. The number of class members, their identities, and their contact information can be found in Defendants' records.

41. There are **questions of law and fact common** to the class members under Rule 23(a)(2), including:

      a)      Whether Defendants have a standardized practice of denying reimbursement for transactions disputed by consumers unless the consumer establishes the transactions were not authorized;

      b)      Whether Defendants' denial of disputes on the grounds that they could not confirm fraud occurred is unlawful under the EFTA;

      c)      Whether Defendants' denial of disputes on the grounds that they found a conflict information during their investigation is unlawful under the EFTA;

      d)      Whether Defendants' denial of disputes on the grounds that they could not confirm fraud occurred breaches Defendants' contractual promises;

      e)      Whether Defendants' denial of disputes on the grounds that they found a conflict information during their investigation breaches Defendants' contractual promises;

      f)      Whether Defendants' investigations of disputed transactions are inadequate, unreasonable, or unfair;

      g)      Whether Defendants' Terms of Use contain unconscionable, illegal, void, or unenforceable provisions pertaining to choice of law, waiver of jury trial rights, and waiver of rights under Rule 23;

      h)      Whether Defendants business practices were unlawful or unfair under California's Unfair Competition Law; and

      i)      The remedies available to Plaintiff and the Class.

42.    Ms. Sparkman's claims are **typical** of the proposed Class members claims under Rule 23(a)(3). Ms. Sparkman disputed unauthorized charges and Defendants denied her claim for reimbursement of the disputed charges on the grounds that Defendants received conflicting in information during their investigation and could not confirm that fraud occurred.

43.    Ms. Sparkman is an **adequate** class representative under Rule 23(a)(3) because she will fairly and adequately the interests of the Class members. She has no interests that conflict with interests of other Class members. She has retained counsel who are experienced trial lawyers, have prosecuted many consumer class actions, and have the resources to vigorously prosecute the action.

44. The common questions outlined above **predominate** over any individual issues under Rule 23(b)(3).

45. A class action is **superior** to individual actions under Rule 23(b)(3) because the damages suffered by each Class member are likely to be relatively small and absent class litigation, many members of the proposed Class would likely receive no relief at all.

46. The Class's claims for injunctive relief can be certified under Federal Rule of Civil Procedure 23(b)(2) because Defendants act on grounds generally applicable to the Class such that declaratory and injunctive relief with respect to the Class as a whole is appropriate.

## FIRST CAUSE OF ACTION
### (Violations of Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq.)

47. Ms. Sparkman incorporates by reference all preceding allegations.

48. Defendants' California Way2Go Cards are access devices within the meaning of the EFTA and Regulation E. 12 C.F.R. § 205.2(a).

49. The EFTA and Regulation E place sharp limitations on consumer liability for unauthorized transactions. *See* 15 U.S.C. § 1693g ("Consumer liability"); 12 C.F.R. § 1005.6 ("Liability of consumer for unauthorized transfers").

50. The EFTA requires that financial institutions limit consumer liability for unauthorized electronic funds transfers to $50 if the consumer notifies the bank within two business days after learning of the loss or theft of an access device such as a prepaid debit card. 12 C.F.R. § 205.6(b)(1).

51. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

52. Specifically, under Section 1693g(b), Defendants' must show that the disputed transfer was authorized:

> BURDEN OF PROOF.--In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the

financial institution to establish that the conditions of liability set forth in subsection (a) have been met, and, if the transfer was initiated after the effective date of section 905, that the disclosures required to be made to the consumer under section 905(a)(1) and (2) were in fact made in accordance with such section.

53. As a Federal Reserve Board Examiner has explained, "When the alleged error is an unauthorized EFT, the EFTA places the burden of proof on the financial institution to establish the transaction was authorized. Therefore, if the institution cannot establish the disputed EFT transaction was authorized, the institution must credit the consumer's account."[1]

54. Defendants explicitly reverse that burden, regularly denying claims on grounds that they "cannot confirm that fraud occurred" or found "conflicting information."

55. Defendants acts and omissions set forth above violate the EFTA.

56. As a direct and proximate result of Defendants' violations of the EFTA, Ms. Sparkman and members of the EFTA Sub-Class are entitled to an award of statutory and actual damages as well as attorney's fees and costs.

57. Defendants' inadequate investigations and imposition of the burden of proof on the consumer contrary to the statute is a violation of 1693f(e), entitling Ms. Sparkman and all EFTA Sub-Class members to treble damages.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

58. Ms. Sparkman incorporates by reference all preceding allegations.

59. Defendants promised that, under "Mastercard's Zero Liability Protection," Ms. Sparkman and members of the Class would "not lose any funds if your Card is lost or stolen." This is an enforceable contract between Defendants and California Way2GO cardholders.

---

[1] Scott Sonbuchner, *Error Resolution and Liability Limitations Under Regulations E and Z: Regulatory Requirements, Common Violations, and Sound Practices*, Consumer Compliance Outlook (2021), *available at* https://www.consumercomplianceoutlook.org/2021/second-issue/error-resolution-and-liability-limitations-under-regulations-e-and-z/. *See also*, *Exarhos v. JPMorgan Chase Bank, N.A.*, 2021 U.S. Dist. LEXIS 135292, at *5-6 (N.D. Ill. July 20, 2021); *Acafrao v. United States Century Bank*, 2010 U.S. Dist. LEXIS 162849, at *22 (S.D. Fla. Aug. 9, 2010); *Brown v. Bank of Am., N.A.*, 2022 U.S. Dist. LEXIS 108749, at *4 (D. Md. June 17, 2022).

60. Defendants promised that if the account holder notifies Defendants within two business days after learning that a card was lost or stolen, a PIN was compromised, or unauthorized transactions were made, then "you can lose no more than $50."

61. Defendants promised that if the account holder notifies Defendants more than two days after learning of the loss, theft, or unauthorized use of the account holder's Way2Go Card, and Defendants can show that they could have stopped the unauthorized transactions if they had been informed sooner, then the account holder "could lose as much as $500," but not more.

62. Defendants promised that the account holder "will not be responsible for unauthorized use of your Card."

63. Defendants breached their promises by failing to reimburse California Way2Go card holders for unauthorized transactions.

64. Defendants breached their promises by failing to properly investigate disputed transactions, putting the onus on consumers to establish that fraud occurred, and denying valid claims on the basis of "conflicting" in information.

65. Ms. Sparkman and the Class were harmed in the amount of the sums not credited back to their accounts as Defendants promised.

66. As a direct and proximate result of Defendant's breach Ms. Sparkman and members of the Class are entitled to an award of nominal and actual damages.

**THIRD CAUSE OF ACTION**
**(Unlawful Business Practices in Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.)**

67. Ms. Sparkman incorporates by reference all preceding allegations.

68. California's Unfair Competition Law (UCL) prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 *et seq.*

69. Defendants' business practices fail to comply with the requirements of the EFTA and Regulation E and are therefore unlawful under the UCL.

70. The EFTA places sharp limitations on consumer liability for unauthorized transactions. *See* 15 U.S.C. § 1693g ("Consumer liability"); 12 C.F.R. § 1005.6 ("Liability of

consumer for unauthorized transfers").

71. The EFTA requires that financial institutions limit consumer liability for unauthorized electronic funds transfers to $50 if the consumer notifies the bank within two business days after learning of the loss or theft of an access device such as a prepaid debit card. 12 C.F.R. § 205.6(b)(1).

72. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

73. Defendants failed to comply with the requirements of the EFTA and Regulation E.

74. Under the UCL, Ms. Sparkman and the Class may enjoin these acts and practices and obtain restitution of all funds retained by Defendants by reason of or through the use of these unlawful acts or practices.

75. Ms. Sparkman individually and on behalf of all members of the general public who are, have been, or may be subjected to Defendants' unlawful business acts and practices are entitled to declaratory and preliminary and permanent injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore to any person in interest, any money or property, Defendants retained by means of such unlawful business practices. Because consumers who receive payments though California's Child Support Services and other California programs cannot choose a different prepaid debit card program, they are likely to be injured by Defendants' conduct in the future.

76. In addition, Ms. Sparkman and the Class may recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure § 1021.5.

**FOURTH CAUSE OF ACTION**
**(Unfair Business Practices in Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200)**

77. Ms. Sparkman incorporates by reference all preceding allegations.

78.     Defendants' acts or practices, including failure to properly investigate cardholder's disputes, placement of the onus on cardholder to prove that transactions are fraudulent, and failure to promptly credit cardholder's accounts for fraudulent transactions despite both legal obligations and promises to do so, are unfair.

79.     Ms. Sparkman and the Class lost money as a result of Defendants' unfair violations of the UCL, specifically the amounts they were entitled to be reimbursed for fraudulent transactions but did not receive.

80.     Under the UCL, Ms. Sparkman and the Class may enjoin these acts and practices and obtain restitution of all funds retained by Defendants by reason of and through the use of these unlawful acts and practices.

81.     Ms. Sparkman individually and on behalf of all members of the general public who are, have been, or may be subjected to Defendants' unfair business acts and practices are entitled to declaratory and injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore to any person in interest, any money or property, Defendants retained by means of such unfair business practices. Because consumers who receive payments though California's Child Support Services and other California programs cannot choose a different prepaid debit card program, they are likely to be injured by Defendants' conduct in the future.

82.     Ms. Sparkman and the Class may recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure § 1021.5.

## VI.     PRAYER FOR RELIEF

Ms. Sparkman seeks judgment in her favor and damages against Defendants, and:

A.      An order certifying this case as a class action under Federal Rule of Civil Procedure 23 appointing Ms. Sparkman as Class Representative and her attorneys as Class Counsel;

B.      An award of all damages to which Ms. Sparkman and the Class are entitled including actual damages, treble damages, statutory damages, nominal damages;

C.      Restitution;

D.  Prejudgment interest;

E.  An award of attorneys' fees and costs; and

F.  Injunctive relief precluding Defendants from continuing to engage in the acts or practices described throughout this complaint when handling disputes received from California Way2Go Card cardholders.

**VII.  DEMAND FOR JURY TRIAL**

Ms. Sparkman demands a trial by jury on all claims so triable.

RESPECTFULLY SUBMITTED AND DATED this 26th day of April, 2023.

    TERRELL MARSHALL LAW GROUP PLLC

    By: /s/ Beth E. Terrell, CSB #178181
        Beth E. Terrell, CSB #178181
        Email: bterrell@terrellmarshall.com
        Blythe H. Chandler, *Pro Hac Vice Forthcoming*
        Email: bchandler@terrellmarshall.com
        936 North 34th Street, Suite 300
        Seattle, Washington 98103-8869
        Telephone: (206) 816-6603
        Facsimile: (206) 319-5450

    Sophia M. Rios (SBN 305801)
    BERGER MONTAGUE PC
    401 B Street, Suite 2000
    San Diego, CA 92101
    Tel: (619) 489-0300
    Fax: (215) 875-4604
    srios@bm.net

    Daniel A. Schlanger, *Pro Hac Vice Forthcoming*
    Email: dschlanger@consumerprotection.net
    SCHLANGER LAW GROUP LLP
    80 Broad Street, Suite 1301
    New York, New York 10016
    Telephone: (212) 500-6114
    Facsimile: (646) 612-7996

    *Attorneys for Plaintiff and the Proposed Class*

**ATTESTATION**

Pursuant to Civil L.R. 501(h)(3), the undersigned attests that each of the other Signatories have concurred in the filing of the document.

Dated: April 26, 2023

By: /s/ Sophia M. Rios
Sophia M. Rios (SBN 305801)
BERGER MONTAGUE PC
401 B Street, Suite 2000
San Diego, CA 92101
Tel: (619) 489-0300
Fax: (215) 875-4604
srios@bm.net