1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    PAULA SPARKMAN,                        Case No.  23-cv-02028-DMR

8                    Plaintiff,
                                            ORDER ON MOTIONS TO DISMISS
9         v.                                AND TO STRIKE

10   COMERICA BANK, et al.,                 Re: Dkt. Nos. 16, 18

11                   Defendants.

12          Plaintiff Paula Sparkman filed this putative class action against Defendants Comerica Bank

13   and Conduent Business Services, LLC alleging claims under the Electronic Funds Transfer Act,

14   15 U.S.C. § 1693, and California law related to Defendants' operation of prepaid debit cards

15   through which a state agency disburses child support payments.  Defendants move pursuant to

16   Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint.  They also move to strike

17   Sparkman's demand for a jury trial.  [Docket Nos. 16 (Mot. to Dismiss), 18 (Mot. to Strike).]  This

18   matter is suitable for determination without oral argument.  Civil L.R. 7-1(b).  For the following

19   reasons, the motion to dismiss is granted in part and denied in part.  The motion to strike is denied.

20   **I.     BACKGROUND**

21          Sparkman makes the following allegations in the complaint, all of which are taken as true

22   for purposes of the motion to dismiss.[1]  Sparkman is a single mother who lives with her daughter

23   in California.  She receives court-ordered child support from her daughter's father.  In California,

24   child support payments are made through California Child Support Services.  Since 2020, that

25   agency has contracted with Defendants to disburse child support payments to recipients through

26

27   _____

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all
of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
28   (per curiam) (citation omitted).

United States District Court
Northern District of California

prepaid debit cards known as "Way2Go Card Prepaid Mastercard" ("Way2Go card").  Sparkman has used a prepaid debit card to access child support funds since 2015.  Compl. ¶¶ 11-13.

Defendants' Way2Go card informational sheet promises that "Mastercard's Zero Liability Protection assures you do not lose any funds if your Card is lost or stolen."  Defendants' Terms of Use for the Way2Go card contain several relevant provisions in the event a card is lost or stolen. The complaint quotes portions of Section 10 of the Terms of Use, entitled "Your Liability."  *See* Compl. ¶¶ 15-17; 60-61.  [Docket No. 16-1 (Solis Decl. June 12, 2023) Ex. A (Comerica Bank Prepaid Mastercard Card Terms of Use) § 10.][2]  In relevant part, Section 10 states:

> If you tell us within two (2) business days, after you learn of the loss or theft of your Card or PIN you can lose no more than $50 if someone used your Card or PIN without your permission.  If you do not tell us within two (2) business days after you learn of the loss or theft of your Card of PIN, and we can prove that we could have stopped someone from using your Card or PIN without your permission if you had told us, you could lose as much as $500.

> You are responsible for all authorized uses of your Card except as set forth below; you will not be responsible for an unauthorized use of your Card.  An "unauthorized" use is a withdrawal or transaction that you or someone you authorized did not transact.  We may refuse to reimburse you for a transaction you assert is unauthorized if: (1) you give your Card, Card number, and/or PIN to another person whom you expressly or implicitly authorize to use your Card, even if that person withdraws or purchases more than you authorized, or (2) we conclude that the facts do not reasonably support a claim of unauthorized use. . . .

Terms of Use § 10; Compl. ¶¶ 14-17.

Sparkman's Way2Go card was stolen out of her car on November 29 or 30, 2022.  She called the Way2Go card program on December 1, 2022 and reported the card stolen. "Defendants' agent told Ms. Sparkman that Defendants could not stop the unauthorized charges from going through and that Ms. Sparkman could not dispute the fraudulent charges until they went through."  *Id*. at ¶¶ 18, 19.  Defendants issued a replacement Way2Go card within 5-7 days

---

[2] Defendants submitted a copy of the Terms of Use with their motion.  The court may consider this document under the incorporation by reference doctrine since the complaint quotes portions of the Terms of Use and alleges Defendants breached particular provisions of the agreement.  *See Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

United States District Court
Northern District of California

1   after she reported her card stolen and told her that she "would receive paperwork to dispute the

2   unauthorized transactions within ten days." She never received that paperwork. *Id*. at ¶¶ 20, 21.

3   Sparkman "followed up with Defendants by phone many times, including on December 9,

4   2022, when Defendants directed her to hand write out the list of charges she disputed." On

5   December 13, 2022, Sparkman emailed to Defendants a handwritten list of 21 disputed charges on

6   her card totaling more than $1,000 made between November 30 and December 1, 2022. *Id*. at ¶¶

7   22, 23. The unauthorized charges on Sparkman's Way2Go card were processed as credit

8   transactions with a signature, without entry of a PIN. She filed a police report reporting the stolen

9   card and fraudulent charges. *Id*. at ¶¶ 24, 26.

10   Sparkman did not receive "paperwork" from Defendants until after she made repeated

11   phone calls and "was eventually told that Defendants had already denied her claim for

12   reimbursement of the disputed charges." On January 5, 2023, Defendants mailed Sparkman a

13   packet "that included reprinted copies of letters dated December 1, 2022 and December 14, 2022"

14   that Sparkman had not previously received. The December 1, 2022 letter acknowledged receipt of

15   Sparkman's complaint of the same date. Other documents confirm that Defendants opened her

16   claim on December 1, 2022. *Id*. at ¶¶ 27-29.

17   The December 14, 2022 letter from Defendants Go Program Fraud Services Department

18   denied Sparkman's claim for reimbursement for the unauthorized transactions, stating the

19   following grounds: "(1) 'we found a conflict in the information provided by you and the

20   information resulting from our research'; and (2) 'we cannot confirm that fraud occurred.'" It

21   appeared to be a form letter. *Id*. at ¶¶ 30, 31. Sparkman "continued to follow up with Defendants

22   by phone and email, including by submitting an appeal" of the denial. Defendants have refused to

23   credit the stolen funds to her account. *Id*. at ¶ 32.

24   Based on these allegations, Sparkman asserts the following claims for relief: 1) violation of

25   the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693g; 2) breach of contract; 3)

26   unlawful business practices in violation of the Unfair Competition Law ("UCL"), California

27   Business & Professions Code section 17200 et seq.; and 4) unfair business practices in violation of

28   the UCL.

United States District Court
Northern District of California

1    Sparkman seeks to represent a California class of allegedly similarly situated persons,

2    defined as:

3    All persons issued a California Way2Go Card® Prepaid Mastercard®
     who (1) notified Defendants that one or more charges on their account

4    were unauthorized or disputed; and (2) were denied reimbursement
     on the grounds that Defendants (i) could not confirm fraud occurred;

5    or (ii) found a conflict in information provided during an
     investigation, through the date of any class certification order in this

6    action.

7    Compl. ¶ 35.  She also seeks to represent an "EFTA subclass":

8    All persons in the Class who (1) were denied on or after April 27,

9    2022 through the date of any class certification order in this action
     and (2) whose denial was with regard to a disputed charge (or charges)

10   totaling more than $50.

11   Defendants move to dismiss the complaint and to strike Sparkman's demand for a jury

12   trial.

13   **II.     MOTION TO DISMISS**

14   **A.     Legal Standard**

15   A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

16   the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

17   When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all

18   of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

19   (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or

20   there is an absence of "sufficient factual matter to state a facially plausible claim to relief."

21   *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

22   *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

23   2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual

24   content that allows the court to draw the reasonable inference that the defendant is liable for the

25   misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged

26   must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of

27   a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing

28   *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir.

United States District Court
Northern District of California

4

1    2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir.

2    2002).

3        **B.    Discussion**

4            **1.    Choice of Law**

5        As an initial matter, Defendants argue that in addition to the EFTA, Michigan law governs

6    the parties' dispute based on the following provision in the Terms of Use: "These Terms will be

7    governed by and construed in accordance with applicable federal law and the laws of the State of

8    Michigan, without reference to its conflict of law principles." Terms of Use ¶ 20.  Accordingly,

9    they argue, Michigan law governs Sparkman's breach of contract claims and altogether preclude

10   the UCL claims.  Mot. 5-6, 10-11.  Sparkman contends that this choice of law provision is not

11   enforceable and asks the court to apply California law.  Opp'n 6-8.

12       The court must determine which law applies to the question of enforceability of the choice

13   of law provision.  The Ninth Circuit has made conflicting rulings about whether federal or state

14   law applies to the choice of law rule determination.  For example, the court has held that in cases

15   where, as here, "[subject matter] jurisdiction is not based on diversity of citizenship . . . federal

16   common law choice-of-law rules apply." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997

17   (9th Cir. 2006); *accord Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th

18   Cir. 1991) ("federal common law applies to the choice of law rule determination" in federal

19   question cases).  However, it has also held that "[i]n a federal question action where the federal

20   court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-

21   of-law rules of the forum state . . ." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151,

22   1164 (9th Cir. 1996).  *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 862 (9th Cir.

23   2022) (Baker, J., concurring) (describing conflict).  In this case, the court exercises federal

24   question jurisdiction over Sparkman's EFTA claim and supplemental jurisdiction over the state

25   law claims.  *See* Compl. ¶¶ 5, 6.  The court need not resolve this conflict because the parties agree

26   that the choice of law analysis is the same under federal common law and California law, although

27   they dispute the outcome of that analysis.  *See* Opp'n 6; Reply 2.

28       "Federal common law follows the approach of the Restatement (Second) of Conflict of

5

United States District Court
Northern District of California

Laws," *Huynh*, 465 F.3d at 997 (citing *Schoenberg*, 930 F.2d at 782), and "[t]he principles

governing analysis of choice-of-law provisions appear in Restatement . . . § 187 (1971), titled

'Law Of The State Chosen By The Parties' . . ." *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 916

(9th Cir. 2003).  Under California law, "[i]n determining the enforceability of arm's-length

contractual choice-of-law provisions, California courts . . . apply the principles set forth in

Restatement section 187, which reflect a strong policy favoring enforcement of such provisions."

*Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992); *see Washington Mut. Bank,*

*FA v. Superior Ct.*, 24 Cal. 4th 906, 914-15, (2001) (holding that "[w]hen the parties have an

agreement that another jurisdiction's law will govern their disputes, the appropriate analysis for

the trial court to undertake is set forth in *Nedlloyd*, which addresses the enforceability of

contractual choice-of-law provisions." (internal citation omitted)).

Section 187 of the Restatement states in relevant part:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>>
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> . . .

Restatement (Second) of Conflict of Laws § 187 (1971).

Defendants argue that Section 187(1) controls and that the court need not conduct a

Section 187(2) inquiry.  Mot. 5-6.  Specifically, they contend that because the parties "could agree

upon which state's law (and statutory remedies) apply to conduct arising from the [the Terms of

United States District Court
Northern District of California

Use]," Section 187(1) is satisfied, concluding the analysis.  *See* Reply 4.  However, "the comments to the provisions explain that Section 187(1) is really 'a rule providing for incorporation by reference and is not a rule of choice of law.'"  *Carmel Financing, LLC v. Schoenmann*, 622 F. Supp. 3d 830, 845-46 (N.D. Cal. 2022) (quoting Rest. § 187, cmt. c).  The Ninth Circuit has explained that Section 187(1) "applies where the contract provides that a particular matter in the contract is to be governed by the law of the specified forum."  *Flores*, 335 F.3d at 917.  In *Flores*, the question was which law governed the issue of attorneys' fees in a dispute stemming from a fishing agreement that provided the terms of crew members' employment.  *Id*. at 916.  "[T]he agreement provided that federal maritime law governed the entire contract rather than the particular issue of attorneys' fees" and "[f]ederal maritime law was not incorporated by reference as to any particular matter in the contract."  *Id*. at 917.  Accordingly, the court concluded that Section 187(1) did not apply and proceeded to analyze the choice of law clause in the contract under Section 187(2).  *Id*. at 917-18 (holding that because "the federal government has a substantial interest in the treatment of seamen and the state of Washington does not have a materially greater interest," federal maritime law governed the issue of attorneys' fees).  *See also Nedlloyd*, 3 Cal. 4th at 465 n.3 (concluding that Section 187(1) was not at issue where there was no indication "that the parties incorporated by reference extrinsic material in the form of Hong Kong law in order to fill a gap in their contract"); *Willcox v. Lloyds TSB Bank, PLC*, No. CV 13-00508 ACK-RLP, 2014 WL 12780002, at *8 (D. Haw. June 10, 2014) (holding that "the Court cannot apply § 187(1) of the Restatement because subsection (1) would only apply if the choice of law provision in the facility agreements provided that a particular matter was to be governed by the laws of Hong Kong" and analyzing choice of law provision under Section 187(2)).

In this case, the Terms of Use does not incorporate Michigan law by reference as to any particular matter in the agreement.  Accordingly, the court must analyze the choice of law provision under Section 187(2).  *See Flores*, 335 F.3d at 917.

Section 187(2) states that the court must apply the Michigan choice of law provision unless Michigan "has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or if application of Michigan law "would be would be

contrary to a fundamental policy of [California] which has a materially greater interest than [Michigan] in the determination of the particular issue and which, under the rule of § 188,[3] would be the state of the applicable law in the absence of an effective choice of law by the parties."

Here, Defendants offer no argument that Michigan has a "substantial relationship to the parties or the transaction." Sparkman is a California resident. Her dispute with Defendants arises out of allegedly unauthorized transactions on her Way2Go card through which she receives child support payments made through a California agency, California Child Support Services. The complaint alleges that Defendants are citizens of Texas, Delaware, and New Jersey. Nothing in the current record connects the parties or the dispute to Michigan. *See Nedlloyd*, 3 Cal. 4th at 467 (noting that a "substantial relationship [is] present when 'one of the parties is domiciled' in the chosen state"); *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 35 F.4th 734, 744 (9th Cir. 2022) ("a jurisdiction ordinarily has a substantial relationship to a transaction if one of the parties has its principal place of business there"). There is also no indication of any "other reasonable basis for the parties' choice" of Michigan. Accordingly, since neither of the tests from Section 187(2)(a) is met, "that is the end of the inquiry, and the court need not enforce the parties' choice of law." *See*

---

[3] Section 188 of the Restatement states:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account . . . to determine the law applicable to an issue include:
> > (a) the place of contracting,
> > (b) the place of negotiation of the contract,
> > (c) the place of performance,
> > (d) the location of the subject matter of the contract, and
> > (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189- 199 and 203.

United States District Court
Northern District of California

1    *Nedlloyd*, 3 Cal. 4th at 466; *CashCall*, 35 F.4th at 744 ("[w]e agree with the district court that the

2    first exception [from Section 187(2)(a)] is satisfied, so we do not consider whether applying tribal

3    law would be contrary to fundamental state policies [under Section 187(2)(b)].").

4         In the absence of an effective choice of law by the parties, the court will instead apply the

5    law of the jurisdiction with "the most significant relationship to the transaction and the parties."

6    *See* Restatement (Second) of Conflict of Laws § 188 (1971). Defendants do not address this or

7    otherwise dispute that California law should apply if the court does not enforce the Michigan

8    choice of law provision. Accordingly, California law applies to this dispute.

9         The court now turns to the individual claims and discusses them in the order set forth in the

10   parties' briefs.

11            **2.    Breach of Contract Claim**

12        Claim two is for breach of contract. Sparkman alleges that Defendants breached two

13   Terms of Use provisions: (1) "if the account holder notifies Defendants within two business days

14   after learning that a card was lost or stolen, a PIN was compromised, or unauthorized transactions

15   were made then 'you can lose no more than $50'" and (2) "if the account holder notifies

16   Defendants more than two days after learning of the loss, theft, or unauthorized use of the account

17   holder's Way2Go Card, and Defendants can show that they could have stopped the unauthorized

18   transactions if they had been informed sooner, then the account holder 'could lose as much as

19   $500,' but not more." Compl. ¶¶ 15, 16; 60, 61. She also alleges that Defendants breached

20   Way2Go's informational sheet, which says "Mastercard's Zero Liability Protection assures you do

21   not lose any funds if your card is lost or stolen." *Id.* at ¶¶ 14, 59. *See* Opp'n 8-9, 11 (clarifying

22   the bases for the breach of contract claim). Sparkman alleges that "Defendants breached their

23   promises by failing to reimburse California Way2Go card holders for unauthorized transactions,"

24   "failing to properly investigate disputed transactions, putting the onus on consumers to establish

25   that fraud occurred, and denying valid claims on the basis of 'conflicting' . . . information."

26   Compl. ¶¶ 63-64. Defendants move to dismiss the breach of contract claim in its entirety.

27        The elements for breach of contract under California law are: "(1) the existence of the

28   contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

United States District Court
Northern District of California

the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  "To state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in haec verba or according to legal effect." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (quoting *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989)); *accord McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006) ("A written contract may be pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect." (citation omitted)).

Defendants first argue that the complaint does not identify any specific provision of the Terms of Use that they allegedly breached.  Mot. 6.  This argument lacks merit.  The complaint identifies the sections of the Terms of Use that Defendants allegedly violated and quotes language from Section 10.  Specifically, it identifies the provisions that if an account holder notifies Defendants within two business days after learning that a card was lost or stolen or unauthorized transactions were made, then "you can lose no more than $50" and that if the account holder notifies Defendants more than two days after learning of loss, theft, or unauthorized use of the card, and "Defendants can show that they could have stopped the unauthorized transactions if they had been informed sooner, then the account holder 'could lose as much as $500,' but not more." *See* Compl. ¶¶ 15-16.  The complaint also alleges that Defendants violated the informational sheet, which states, "Mastercard's Zero Liability Protection assures you do not lose any funds if your card is lost or stolen." *Id.* at ¶¶ 14, 59.  These allegations are sufficient to plead the relevant terms of the contract.

Defendants next argue that the complaint does not allege that Defendants violated any provision of the Terms of Use.  Mot. 6-8.  The complaint alleges that Defendants breached the Terms of Use in four ways: 1) "by failing to reimburse California Way2Go card holders for unauthorized transactions"; 2) by "failing to properly investigate disputed transactions"; 3) by "putting the onus on consumers to establish that fraud occurred"; and 4) by "denying valid claims on the basis of 'conflicting' . . . information." Compl. ¶¶ 63-64.  Defendants challenge each of these alleged breaches.

United States District Court
Northern District of California

1    First, Defendants contend that "the Terms of Use expressly does not require that

2    Defendants reimburse cardholders for all transactions that cardholders claim are unauthorized."

3    Mot. 6.  Instead, they argue, Section 10 states that Defendants may refuse to reimburse a

4    cardholder for an allegedly unauthorized transaction if "we conclude that the facts do not

5    reasonably support a claim of unauthorized use."  Defendants note that the complaint alleges that

6    their December 14, 2022 letter states grounds for denying her claim, including that "(1) 'we found

7    a conflict in the information provided by you and the information resulting from our research'; and

8    (2) 'we cannot confirm that fraud occurred.'"  *See* Compl. ¶ 30.  Defendants argue that the Terms

9    of Use provide them "with 'great flexibility' in concluding when transactions are unauthorized"

10   and that Sparkman "can't allege [Defendants] breached [their] obligations under the [Terms of

11   Use] simply by disagreeing with the outcome," citing *In re Bank of America California*

12   *Unemployment Benefits Litigation*, No. 21-md-2992-LAB-MSB, ---F. Supp. 3d---, 2023 WL

13   3668535, at *27 (S.D. Cal. May 25, 2023).  Mot. 7.  In *In re Bank of America*, the court examined

14   provisions in a prepaid debit card account agreement that included a "Zero Liability" policy for

15   unauthorized transactions and allowed the issuing bank "to determine a transaction is [not]

16   'unauthorized' when it 'conclude[s] that the facts and circumstances do not reasonably support a

17   claim of unauthorized use" (Section 9) along with a provision that the court described as providing

18   the bank with "great flexibility in investigating allegations of error" (Section 11).  2023 WL

19   3668535, at *27.  The plaintiffs alleged breaches of those provisions.  The court held that the

20   plaintiffs had not "sufficiently allege[d] [the bank] failed to reach the conclusion as required by

21   Section 9 or conduct the investigation required by Section 11" and that "[b]ased on the plain

22   language of the contract, Plaintiffs can't allege [the bank] breached its obligations under the

23   Account Agreement simply by disagreeing with the outcome."  *Id*.

24        So too here.  Section 10 of the Terms of Use sets forth circumstances under which

25   Defendants "may refuse to reimburse [a cardholder] for a transaction [they] assert is

26   unauthorized," including if Defendants "conclude that the facts do not reasonably support a claim

27   of unauthorized use."  Sparkman's claim that Defendants breached Section 10 "by failing to

28   reimburse California Way2Go card holders for unauthorized transactions" amounts to a

United States District Court
Northern District of California

1    disagreement with the outcome of Defendants' determination "that the facts do not reasonably

2    support a claim of unauthorized use."  Plaintiff's disagreement with Defendants' determination

3    does not equate to a breach of Defendants' obligation under the Terms of Use.

4         Sparkman responds that whether Section 10 gives Defendants "great flexibility" to

5    determine whether transactions are authorized or not is "ambiguous in light of the promises to

6    reimburse for unauthorized transactions made earlier in the Term[s] of Use" and should be

7    "construed against the drafter."  Opp'n 9.  This argument fails because Sparkman does not identify

8    any particular term that she contends is ambiguous or explain whether or how the provisions of

9    Section 10 conflict with each other.

10        Sparkman also argues that the court should not dismiss her breach of contract claim

11   because the Terms of Use violate the EFTA, 15 U.S.C. § 1693g(b).  *Id.* at 9-10.  That provision

12   states:

13            In any action which involves a consumer's liability for an
           unauthorized electronic fund transfer, the burden of proof is upon the
14            financial institution to show that the electronic fund transfer was
           authorized or, if the electronic fund transfer was unauthorized, then
15            the burden of proof is upon the financial institution to establish that
           the conditions of liability set forth in subsection (a) have been met . .
16            .

17   15 U.S.C. § 1693g(b).  The court notes that Sparkman's breach of contract claim is distinct from

18   any claim under the EFTA.  To the extent that Sparkman contends any provision in her agreement

19   with Defendants violates the EFTA, that is an EFTA claim.

20        Sparkman also argues that the Terms of Use violate EFTA's anti-waiver provision which

21   states in relevant part, "[n]o writing or other agreement between a consumer and any other person

22   may contain any provision which constitutes a waiver of any right conferred or cause of action

23   created by this subchapter."  15 U.S.C. § 1693*l*.  Again, to the extent that Sparkman alleges a

24   violation of any provision of the EFTA, including section 1693*l*, she may bring a standalone

25   EFTA claim if one is authorized and supportable.  Sparkman cites no authority for the proposition

26   that she may base a breach of contract claim upon provisions of the EFTA; her cases involve

27   violations of the EFTA, not breach of contract claims.  *See* Opp'n 11 (citations omitted).  In sum,

28   to the extent that Sparkman's breach of contract claim is based on Defendants' "fail[ure] to

United States District Court
Northern District of California

1  reimburse California Way2Go card holders for unauthorized transactions" in breach of Terms of

2  Use Section 10, it is dismissed with leave to amend.

3          Defendants next move to dismiss the breach of contract claim based on the allegation that

4  Defendants breached the Terms of Use "by failing to properly investigate disputed transactions."

5  *See* Compl. ¶ 64. Defendants contend that "there is no contractual provision governing how

6  Defendants were supposed to conduct their investigation." Mot. 7. Accordingly, they argue, there

7  is no standard by which to measure whether Defendants conducted a proper investigation. *Id*.

8  While not entirely clear, Sparkman appears to argue that Defendants have limited room for

9  discretion in terms of how they investigate purported unauthorized transactions under the EFTA,

10  15 U.S.C. § 1693g (set forth above). *See* Opp'n 10-11. As noted, Sparkman offers no authority

11  that she may premise a breach of contract claim on an EFTA provision. She does not explain how

12  Defendants' alleged failure to properly investigate breached the Terms of Use. Accordingly,

13  Sparkman's breach of contract claim based on Defendants' failure to properly investigate disputed

14  transactions in violation of the Terms of Use is dismissed with leave to amend.

15          Next, Defendants move to dismiss the breach of contract claim based on the allegation that

16  Defendants breached the Terms of Use by "putting the onus on consumers to establish that fraud

17  occurred" and by "denying valid claims on the basis of 'conflicting' . . . information." *See* Compl.

18  ¶ 64. Defendants argue that there is no provision in the Terms of Use that states that Defendants

19  cannot rely on cardholders "for information in conducting their investigation." They also contend

20  that their citation to "conflicting" information was the explanation for why Defendants concluded

21  that "the facts do not reasonably support a claim of unauthorized use." Mot. 8. Sparkman does

22  not respond to these arguments or identify which particular provision of the Terms of Use

23  Defendants breached in connection with this conduct. The court concludes that the complaint fails

24  to state a breach of contract claim based on Defendants' "putting the onus on consumers to

25  establish that fraud occurred" and "denying valid claims on the basis of 'conflicting' . . .

26  information" in violation of the Terms of Use. These claims are dismissed with leave to amend.

27          Finally, Sparkman argues that she alleges a breach based on the promise Defendants made

28  in the information sheet attached to their prepaid debit cards that "Mastercard's Zero Liability

Protection assures you do not lose any funds if your Card is lost or stolen." *See* Compl. ¶¶ 14, 59; Opp'n 11. She argues that Defendants breached this promise "when [her] card was stolen, she reported it stolen to Defendants, and they denied her claim for reimbursement of the stolen funds." *Id*. She notes that "the Zero Liability Protection promise does not appear in the Terms of Use but is instead in a separate document." The complaint clearly alleges that the information state constituted "an enforceable contract between Defendants and California Way2Go cardholders" and that Defendants breached this promise, *see* Compl. ¶¶ 15, 59, 63. Defendants did not address this in their opening brief and did not ask the court to consider the information sheet under the incorporation by reference doctrine, but included a lengthy argument in their reply challenging Sparkman's claims based on the information sheet. *See* Reply 7-8. The court declines to consider arguments raised for the first time on reply and denies the motion to dismiss the breach of contract claim to the extent that it is based on the information sheet attached to the Way2Go card.

### 3. EFTA Claim

Claim one is violation of the EFTA, 15 U.S.C. §§ 1693g(b) and 1693f(e). Compl. ¶¶ 52-57. Section 1693g states in relevant part:

> **(a) Unauthorized electronic fund transfers; limit**
>
> A consumer shall be liable for any unauthorized electronic fund transfer involving the account of such consumer only if the card or other means of access utilized for such transfer was an accepted card or other [means] of access and if the issuer of such card, code, or other means of access has provided a means whereby the user of such card, code, or other means of access can be identified as the person authorized to use it, such as by signature, photograph, or fingerprint or by electronic or mechanical confirmation. In no event, however, shall a consumer's liability for an unauthorized transfer exceed the lesser of—
>
> > (1) $50; or
> >
> > (2) the amount of money or value of property or services obtained in such unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected. . . .
>
> **(b) Burden of proof**
>
> In any action which involves a consumer's liability for an

> unauthorized electronic fund transfer, the burden of proof is upon the
> financial institution to show that the electronic fund transfer was
> authorized or, if the electronic fund transfer was unauthorized, then
> the burden of proof is upon the financial institution to establish that
> the conditions of liability set forth in subsection (a) have been met . .
> .

15 U.S.C. § 1693g(a), (b).  Section 1693f(e) authorizes treble damages for certain violations of the

EFTA.  It states:

> If in any action under section 1693m of this title, the court finds that-
> -
> **(1)** the financial institution did not provisionally recredit a consumer's
> account within the ten-day period specified in subsection (c), and the
> financial institution (A) did not make a good faith investigation of the
> alleged error, or (B) did not have a reasonable basis for believing that
> the consumer's account was not in error; or
>
> **(2)** the financial institution knowingly and willfully concluded that
> the consumer's account was not in error when such conclusion could
> not reasonably have been drawn from the evidence available to the
> financial institution at the time of its investigation,
>
> then the consumer shall be entitled to treble damages determined
> under section 1693m(a)(1) of this title.

15 U.S.C.A. § 1693f(e).  "The EFTA authorizes a private right of action against a bank that 'fails

to comply' with any provision of the Act, including the provision limiting a consumer's liability

for unauthorized transfers."  *Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 584 (9th Cir.

2021) (citing 15 U.S.C. § 1693m(a); holding that when "a bank concludes that the EFTA

authorizes liability in excess of the default cap, the consumer must allege facts plausibly

suggesting that the bank's conclusion is wrong in order to state a claim that the bank has violated

§ 1693g.").

   Sparkman alleges that section 1693g places "sharp limitations on consumer liability for

unauthorized transactions," and that Defendants violate section 1693g(b) by "explicitly

revers[ing]" the burden of proof on financial institutions to establish that transactions are

authorized, "regularly denying claims on grounds that they 'cannot confirm that fraud occurred' or

found 'conflicting information."  Compl. ¶¶ 49, 53-54.  She also alleges that "Defendants'

inadequate investigations and imposition of the burden of proof on the consumer contrary to the

statute is a violation of [section] 1693f(e)."  *Id.* at ¶ 57.

   Defendants argue that the complaint does not allege sufficient facts to support the assertion

that Defendants failed to conduct an adequate investigation into Sparkman's claim of unauthorized transactions. They argue that the complaint alleges only a "conclusory assumption that a proper investigation was not performed" simply because her claim was denied. Mot. 9. This argument misapprehends the basis for Sparkman's EFTA claim. As set forth above, section 1693g(a) limits consumer liability for unauthorized electronic fund transfers to either $50 or the amount of money or value lost through unauthorized electronic fund transfers prior to notification of the financial institution. In turn, where a consumer disputes liability for an unauthorized electronic fund transfer, section 1693g(b) requires financial institutions to bear the burden of proof of establishing "that the conditions of [the consumer's] liability" for the unauthorized transfer under subsection (a) "have been met." In other words, "[f]or reports of unauthorized electronic fund transfers, '[t]he financial institution bears the burden of establishing that a transaction was authorized.'" *In re Bank of Am.*, 2023 WL 3668535, at *10 (quoting *Green v. Cap. One, N.A.*, 557 F. Supp. 3d 441, 450 (S.D.N.Y. 2021)).

The complaint alleges that Sparkman notified Defendants of the theft of her Way2Go card within two days; that after the theft she disputed unauthorized transactions totaling more than $1,000 and filed a claim for reimbursement; and that Defendants denied her claim based on a "conflict in the information provided by [Sparkman] and the information resulting from [Defendants'] research" stating "we cannot confirm that fraud occurred." These allegations are sufficient to establish that Defendants' denial of Sparkman's claim for reimbursement and failure to reimburse her for amounts in excess of the statutory cap on consumer liability violated sections 1693g(a) and (b) because Defendants failed to show that the disputed transactions were authorized as required by the statute.

Sparkman's section 1693f(e) claim is directed at Defendants' "inadequate investigations and imposition of the burden of proof on the consumer." *See* Compl. ¶ 57. The complaint alleges that Sparkman reported the theft of her Way2Go card and sent Defendants a list of 21 disputed charges, all of which were made without entry of a PIN, contrary to her practice. It further alleges that Sparkman repeatedly called Defendants to follow up on her claim of unauthorized transactions but never received the paperwork Defendants' agents promised, and instead

United States District Court
Northern District of California

1    Defendants quickly denied her claim via a form letter "lacking individualized information."  These

2    allegations are sufficient to support the inference that Defendants did not conduct a reasonable,

3    adequate investigation.  *See Bank of Am*., 2023 WL 3668535, at *11.

4            Finally, Defendants argue that the complaint "fails to allege that she provided information

5    about the basis she believed each transaction was unauthorized" and that general allegations about

6    her reporting the transactions to Defendants are insufficient.  Mot. 10.  The complaint alleges that

7    Sparkman spoke with an agent on December 1, 2022, that she followed up by phone "many

8    times," and that she sent Defendants "a handwritten list of 21 disputed charges made using her

9    card" following the theft.  These allegations "are more than enough to permit the Court to infer

10   that [Sparkman] indicated why [she] believe[d]" the transactions were unauthorized during her

11   communications with Defendants.  *See Bank of Am*., 2023 WL 3668535, at *10 (internal quotation

12   marks omitted).  Taking these allegations as true and drawing all inferences in Sparkman's favor,

13   the court concludes the complaint plausibly alleges that Defendants' investigation was inadequate.

14   Defendants' motion to dismiss the EFTA claim is denied.

15                   **4.    UCL Claims**

16           The third and fourth claims are unlawful and unfair business practices under the UCL.

17   Sparkman seeks injunctive relief and restitution of all funds retained by Defendants in connection

18   with these claims, as well as attorneys' fees and costs.  *See* Compl. ¶¶ 74, 76, 80, 82.  The court

19   first addresses Defendants' arguments applicable to both claims and then turns to the individual

20   claims.

21           First, Defendants argue that Sparkman may not bring claims under the UCL because the

22   Terms of Use are governed by Michigan law.  Mot. 10-11.  As discussed above, the choice of law

23   provision in the Terms of Use is unenforceable and California law governs this dispute.

24   Accordingly, the court denies the motion to dismiss on this ground.

25           Next, Defendants note that the UCL is equitable in nature and provides for injunctive relief

26   and restitution only.  *See Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1144

27   (2003) ("We have stated that under the UCL, [p]revailing plaintiffs are generally limited to

28   injunctive relief and restitution." (quotation marks omitted)).  Defendants argue that Sparkman "is

                                         17

1    entitled to neither," and thus the UCL claims must be dismissed.  Mot. 11-13.  Specifically,

2    Defendants argue that the UCL claims are based on the same allegations as the breach of contract

3    and EFTA claims and that Sparkman may recover monetary damages for those claims.  Therefore,

4    they argue, Sparkman has an adequate remedy at law and is not entitled to injunctive relief and/or

5    restitution under the UCL, citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir.

6    2020).  *Id.* at 12.

7         The plaintiff in *Sonner* brought a putative class action against a company that marketed

8    and sold a dietary supplement.  The lawsuit sought damages and equitable restitution for false or

9    misleading advertising under the UCL and CLRA.  On the eve of trial, the plaintiff amended the

10   complaint to drop her damages claim, choosing to proceed solely with state law equitable claims

11   for restitution and equitable relief.  971 F.3d at 837-38.  The court then dismissed the claim for

12   restitution on the ground that an adequate remedy at law—damages—was available, and denied

13   the plaintiff's request to amend the complaint to reallege the damages claim.  *Id.* at 838.  The

14   Ninth Circuit affirmed the dismissal, holding that "federal courts must apply equitable principles

15   derived from federal common law to claims for equitable restitution under" the UCL and CLRA.

16   Accordingly, it held, a plaintiff "must establish that she lacks an adequate remedy at law before

17   securing equitable restitution for past harm under the UCL and CLRA."  *Id.* at 844.  *See*

18   *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-CV-05286-PJH, 2020 WL 6544411, at *5-

19   6 (N.D. Cal. Nov. 6, 2020) (dismissing requests for restitution and disgorgement with prejudice

20   based on the plaintiff's failure to show that it lacks an adequate legal remedy for past harm).

21        This court has previously agreed with the reasoning of courts holding that *Sonner* does not

22   impose strict requirements at the pleading stage because plaintiffs "may allege claims in the

23   alternative at the pleading stage."  *See Sinatro v. Barilla Am., Inc.*, No. 22-CV-03460-DMR, ---F.

24   Supp. 3d---, 2022 WL 10128276, at *16 (N.D. Cal. Oct. 17, 2022) (quoting *Freeman v. Indochino*

25   *Apparel, Inc.*, 443 F. Supp. 3d 1107, 1114 (N.D. Cal. 2020)).  Defendants offer no persuasive

26   reason to depart from this conclusion in this case.  Moreover, prospective injunctive relief, which

27   is equitable, is aimed at future harm resulting from Defendants' allegedly unlawful conduct when

28   handling disputes received from California Way2Go cardholders.  *See* Compl. Prayer for Relief,

United States District Court
Northern District of California

United States District Court
Northern District of California

(F).  Injunctions "serve different purposes and remedy different harms than" legal remedies such as damages for past harm.  *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) (denying motion to dismiss equitable relief based on defendant's claim that plaintiff "has an adequate remedy at law").  The court may reassess the issue of available remedies at a later stage of the case.  Accordingly, the court denies the motion to dismiss the UCL claims on the basis that they seek equitable relief.

Relatedly, Defendants contend that Sparkman may not request restitution in connection with her UCL claims because the funds that Sparkman lost were taken by unspecified third parties, not Defendants.  Mot. 12-13 (citations omitted).  In *Kanji v. Bank of Am., N.A.*, No. CV 20-3820-RSWL-SK, 2020 WL 8175548, at *7 (C.D. Cal. Aug. 25, 2020), the plaintiff's UCL claim sought restitution of the amount allegedly stolen from her bank account by cybercriminals.  The court held that in order to establish entitlement to restitution under the UCL, the plaintiff was required to show "(1) that she had at one time 'an ownership interest' in the money or property she 'lost' and (2) that money or property must have been 'acquired' by the defendant." *Id*. (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011)).  It concluded that the plaintiff failed to state a UCL claim because she failed to allege that the defendant bank "'acquired' the money that she 'lost'" since she affirmatively alleged that the cybercriminals took the money.  *Id*. (citing *Lusinyan v. Bank of Am., N.A.*, No. CV-14-9586 DMG (JCX), 2015 WL 12777225, at *5 (C.D. Cal. May 26, 2015) (dismissing UCL claim for restitution where plaintiffs did not allege that the defendant acquired or currently possessed the money plaintiffs lost)).  Sparkman does not address this authority or Defendants' argument that she may not request restitution under her UCL claims.  Accordingly, her claim for restitution is dismissed with leave to amend.

### a. Unlawful Business Practices

Defendants separately move to dismiss the claim for unlawful business practices on the ground that the complaint does not adequately allege violation of any law.  Mot. 13.

Under Section 17200, unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  *See* Cal. Bus. & Prof. Code § 17200.  A business practice is "unlawful" under section 17200 if it violates an

1    underlying state or federal statute or common law.  *See Cal-Tech Commc'ns, Inc. v. Los Angeles*

2    *Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Sparkman's UCL claim challenging unlawful

3    business practices is based on the alleged violations of the EFTA.  See Compl. ¶¶ 69-73.

4    Defendants argue that this claim must be dismissed because Sparkman has not stated a claim

5    under that statute.  Mot. 13-14.  As discussed above, the court concludes that the complaint

6    adequately states a claim under the EFTA.  Accordingly, the motion to dismiss the unlawful

7    business practices claim is denied.

8                              **b.      Unfair Business Practices**

9          Defendants move to dismiss the unfair business practices claim on the ground that the

10   complaint "has not alleged facts to support a finding of any practice that rises to the level of

11   'unfair' under the UCL."  Mot. 14.

12         "As the UCL's three-prong structure makes clear, a business practice may be 'unfair,' and

13   therefore illegal under the UCL, 'even if not specifically proscribed by some other law.'"  *Epic*

14   *Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023) (quoting *Cel-Tech Commc'ns, Inc.*

15   *v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).  "[T]o support a finding of unfairness to

16   *consumers*, a court uses the balancing test, which 'weigh[s] the utility of the defendant's conduct

17   against the gravity of the harm to the alleged victim.'"  *Id.* (emphasis in original) (quoting

18   *Progressive W. Ins. Co. v. Super. Ct.*, 135 Cal. App. 4th 263, 285 (2005)).

19         Sparkman alleges Defendants' unfair acts or practices include failing to properly

20   investigate cardholders' disputes, placing "the onus on cardholder[s] to prove that transactions are

21   fraudulent," and failing to promptly credit cardholders' accounts for fraudulent transactions

22   despite legal and contractual obligations to do so.  Compl. ¶ 78.  This alleged misconduct easily

23   falls within the "broad, sweeping language" of the UCL's unfair prong given the gravity of the

24   harm to recipients of child support payments who experience unauthorized fund transfers and are

25   forced to bear the associated risks by Defendants.  Accordingly, the motion to dismiss the unfair

26   business practices claim is denied.

27   **III.    MOTION TO STRIKE**

28         Defendants move pursuant to Federal Rule of Civil Procedure 39(a)(2) to strike

1    Sparkman's demand for a jury trial "on all claims so triable."  Motion to Strike 1; *see* Compl. 13.

2    They argue that Sparkman waived her right to a jury trial on her EFTA and breach of contract

3    claims because the Terms of Use contains a jury trial waiver clause, as follows:

> **Waiver of Right to Jury Trial.**  If you have a problem with your
> Card or the Card service, please bring it to our attention immediately
> by calling Customer Service . . . [i]f a dispute cannot be resolved
> informally, you or we may file an action.  You and we each give up
> the right to a trial by a jury to resolve each dispute, claim, demand,
> cause of action, and controversy between you and us arising out of,
> or relating to your Card or this service.  This includes, without
> limitation, claims brought by you as a class representative on behalf
> of others, and claims by a class representative on your behalf as a
> class member (so called "class action" suits).

10   Terms of Use § 14.[4]

11       Sparkman does not dispute the existence of this provision in the Terms of Use but argues

12   that it should not be enforced because she did not knowingly and voluntarily waive her right to a

13   jury trial.

14       Once a jury demand has been made, a "trial on all issues so demanded must be by jury

15   unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no

16   federal right to a jury trial."  Fed. R. Civ. P. 39(a)(2).  Federal law permits waivers of the right to a

17   jury trial "as long as each party waived its rights knowingly and voluntarily."  *In re Cnty. of*

18   *Orange*, 784 F.3d 520, 523 (9th Cir. 2015).  "Because the right to a jury trial is a fundamental

19   right guaranteed to our citizenry by the Constitution, . . . courts should indulge every reasonable

20   presumption against waiver."  *SEC v. Jensen*, 835 F.3d 1100, 1107 (9th Cir. 2016) (quoting *Solis*

21   *v. County of Los Angeles*, 514 F.3d 946, 955 (9th Cir. 2008)).  The burden of proving that a waiver

22   was knowing and voluntary is on the party attempting to enforce the waiver.  *Cannon v. Wells*

23   *Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1058 (N.D. Cal. 2013).

24       Defendants do not address the "knowing and voluntary" standard in their motion.  Instead,

25   they cite cases in which courts in the Ninth Circuit enforced waivers of jury trials without

26

27   ───────────────

28   [4] Defendants also assert that Sparkman is not entitled to a jury trial on her UCL claims, which
     Sparkman does not dispute.  Mot. 4-5; Opp'n 9.

United States District Court
Northern District of California

discussing the facts of those cases or comparing them to this case. *See* Mot. 3-4.  In the absence of any showing by Defendants that Sparkman knowingly and voluntarily waived her right to a jury trial, the court finds that Defendants have failed to meet their burden on this issue.  Accordingly, Defendants' motion to strike the jury demand is denied.[5]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint is granted in part and denied in part.  Sparkman's breach of contract claims based on the Terms of Use and claim for restitution are dismissed with leave to amend.  The motion to strike Sparkman's jury demand is denied.  Any amended complaint is due within 14 days of the date of this Order.  If no amended complaint is filed, Defendants' answer is due within 28 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: August 4, 2023



Donna M. Ryu
Chief Magistrate Judge

<div style="text-align: left; font-style: italic;">United States District Court<br>Northern District of California</div>

---

[5] Defendants also argue that the EFTA does not confer the right to a jury trial because 15 U.S.C. § 1693m(b) states, "[i]n determining the amount of liability in any action under subsection (a), *the court* shall consider" certain factors.  Mot. 6 (emphasis in original) (quoting 15 U.S.C. § 1693m(b)).  They cite two cases from outside the Ninth Circuit in which courts ruling on motions for default judgment observed in footnotes that "[t]he EFTA indicates that a court, and not a jury, is responsible for determining any award of damages."  Mot. 6 (citations omitted).  They cite a third case, also from outside the Ninth Circuit, in which a court questioned whether the plaintiff was entitled to a jury trial on his EFTA claim.  *Id*. (citation omitted).  Sparkman disputes the persuasiveness of these cases and argues that she is entitled to a jury "on at least the liability portion of her EFTA claim."  Opp'n 9.  The parties did not cite, and the court did not find, Ninth Circuit authority on this issue.  The court defers resolution of this issue since Defendants do not dispute that some portion of Sparkman's EFTA claim will be tried to a jury.  The court will determine which specific issues will be submitted to the jury closer to the time of trial.