UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULA SPARKMAN,<br>　　　　Plaintiff,<br>　v.<br>COMERICA BANK, et al.,<br>　　　　Defendants. | Case No. 23-cv-02028-DMR<br><br>**ORDER ON MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Re: Dkt. No. 52 |

Plaintiff Paula Sparkman filed this putative class action against Defendants Comerica Bank and Conduent Business Services, LLC alleging claims under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, and California law related to Defendants' operation of prepaid debit cards through which a state agency disburses child support payments. Defendants now move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss and/or strike portions of the First Amended Class Action Complaint ("FAC"). [Docket No. 48.] This matter is suitable for determination without oral argument. Civil L.R. 7-1(b). For the following reasons, the motion to dismiss is granted in part and denied in part.

**I.　BACKGROUND**

Sparkman makes the following allegations in the FAC, all of which are taken as true for purposes of the motion to dismiss.[1] Sparkman is a single mother who lives with her daughter in California. She receives court-ordered child support from her daughter's father. In California, child support payments are made through California Child Support Services. Since 2020, that

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

agency has contracted with Defendants to disburse child support payments to recipients through prepaid debit cards known as "Way2Go Card Prepaid Mastercard" ("Way2Go card"). Sparkman has used a prepaid debit card to access child support funds since 2015. [Docket No. 42 (FAC) ¶¶ 12-14.

Defendants' Way2Go card informational sheet promises that "Mastercard's Zero Liability Protection assures you do not lose any funds if your Card is lost or stolen." *Id.* at ¶ 15. Defendants' Terms of Use for the Way2Go card contain several relevant provisions in the event a card is lost or stolen. The complaint quotes portions of Section 10 of the Terms of Use, entitled "Your Liability." *See id.* at ¶¶ 16-18; 86-88, 90. [Docket No. 16-1 (Solis Decl. June 12, 2023) Ex. A (Comerica Bank Prepaid Mastercard Card Terms of Use) § 10.][2] In relevant part, Section 10 states:

> If you tell us within two (2) business days, after you learn of the loss or theft of your Card or PIN you can lose no more than $50 if someone used your Card or PIN without your permission. If you do not tell us within two (2) business days after you learn of the loss or theft of your Card of PIN, and we can prove that we could have stopped someone from using your Card or PIN without your permission if you had told us, you could lose as much as $500.
>
> You are responsible for all authorized uses of your Card except as set forth below; you will not be responsible for an unauthorized use of your Card. An "unauthorized" use is a withdrawal or transaction that you or someone you authorized did not transact. We may refuse to reimburse you for a transaction you assert is unauthorized if: (1) you give your Card, Card number, and/or PIN to another person whom you expressly or implicitly authorize to use your Card, even if that person withdraws or purchases more than you authorized, or (2) we conclude that the facts do not reasonably support a claim of unauthorized use. . . .

Terms of Use § 10; FAC ¶¶ 16-18.

Sparkman's Way2Go card was stolen out of her car on November 29 or 30, 2022. She

---

[2] Defendants submitted a copy of the Terms of Use with their motion to dismiss the original complaint and cite to the Terms of Use in the instant motion. Mot. 3 n.2. The court may consider this document under the incorporation by reference doctrine since the complaint quotes portions of the Terms of Use and alleges Defendants breached particular provisions of the agreement. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

called the Way2Go card program on December 1, 2022 and reported the card stolen. "Defendants' agent told Ms. Sparkman that Defendants could not stop the unauthorized charges from going through and that Ms. Sparkman could not dispute the fraudulent charges until they went through." Defendants issued a replacement Way2Go card within 5-7 days after she reported her card stolen and told her that she "would receive paperwork to dispute the unauthorized transactions within ten days." She never received that paperwork. *Id*. at ¶¶ 19-22.

Sparkman "followed up with Defendants by phone many times, including on December 9, 2022, when Defendants directed her to hand write out the list of charges she disputed." On December 13, 2022, Sparkman emailed to Defendants a handwritten list of 21 disputed charges on her card totaling more than $1,000 made between November 30 and December 1, 2022. *Id*. at ¶¶ 23, 24. The unauthorized charges on Sparkman's Way2Go card were processed as credit transactions with a signature, without entry of a PIN. She filed a police report reporting the stolen card and fraudulent charges. *Id*. at ¶¶ 25, 27.

Sparkman did not receive "paperwork" from Defendants until after she made repeated phone calls and "was eventually told that Defendants had already denied her claim for reimbursement of the disputed charges." On January 5, 2023, Defendants mailed Sparkman a packet "that included reprinted copies of letters dated December 1, 2022 and December 14, 2022" that Sparkman had not previously received. The December 1, 2022 letter acknowledged receipt of Sparkman's complaint of the same date. Other documents confirm that Defendants opened her claim on December 1, 2022. *Id*. at ¶¶ 28-30.

The December 14, 2022 letter from Defendants Go Program Fraud Services Department denied Sparkman's claim for reimbursement for the unauthorized transactions, stating the following grounds: "(1) 'we found a conflict in the information provided by you and the information resulting from our research'; and (2) 'we cannot confirm that fraud occurred.'" It appeared to be a form letter. *Id*. at ¶¶ 31, 32. Sparkman "continued to follow up with Defendants by phone and email, including by submitting an appeal" of the denial. Defendants have refused to credit the stolen funds to her account. *Id*. at ¶ 33, 35.

Sparkman further alleges that on June 26, 2023, she discovered a hold on the funds on her

Way2Go card account related to a cancelled charge at a gas station. She tried to call Defendants to resolve the issue and the call was disconnected. She called Defendants again four minutes later and "was told the gas station was holding her funds" and to address the issue with the gas station. After calling the gas station and learning that it was not holding the funds, Sparkman called Defendants a third time and the call was again disconnected. She called Defendants a few minutes later for the fourth time and spoke with an agent. Sparkman made no other calls to Defendants in June 2023. *Id*. at ¶¶ 36-41. Pursuant to the Terms of Use, Defendants charge a $.50 fee per call to Defendants' "Interactive Voice Response (IVR) automated line" but allow three such calls "per month for no fee" and state "[t]here is no additional fee for transferring to a live customer service agent." *Id*. at ¶ 42; Terms of Use § 26 (Fee Schedule). Defendants charged Sparkman two $.50 fees for calls on June 26, 2023, even though two of the four calls were disconnected. "Even if the two disconnected calls are counted, Defendants charged Ms. Sparkman for at least one call that they promised would be free." FAC ¶ 43. Sparkman alleges that "the practice of charging consumers a junk fee to call an automated phone system is unfair." *Id*.

Sparkman seeks to represent two classes and two subclasses of allegedly similarly situated persons, defined as:

> **Class**: All persons issued a California Way2Go Card® Prepaid Mastercard® who (1) notified Defendants that one or more charges on their account were unauthorized or disputed; and (2) were denied reimbursement on the grounds that Defendants (i) could not confirm fraud occurred; or (ii) found a conflict in information provided during an investigation, through the date of any class certification order in this action.
>
> **EFTA Sub-Class**: All persons in the Class who (1) were denied on or after April 27, 2022 through the date of any class certification order in this action and (2) whose denial was with regard to a disputed charge (or charges) totaling more than $50.
>
> **IVR Surcharge Class**: All persons issued a California Way2Go Card® Prepaid Mastercard® whose accounts Defendants charged at least one $0.50 fee for calling Defendants' IVR telephone system.
>
> **IVR Surcharge Sub-Class**: All members of the IVR Surcharge Class whose accounts Defendants charged at least one $0.50 fee for calling Defendants' IVR telephone system without allowing the consumer at least three free calls in a month before imposing the charge.

4

FAC ¶ 44.

Sparkman filed the complaint in April 2023. Defendants moved to dismiss the complaint and to strike Sparkman's demand for a jury trial. The court granted in part and denied in part the motion to dismiss. Specifically, the court dismissed Sparkman's breach of contract claims based on the Terms of Use and claim for restitution with leave to amend. *Sparkman v. Comerica Bank*, No. 23-CV-02028-DMR, 2023 WL 5020269, at *8, 12 (N.D. Cal. Aug. 4, 2023). The court also denied the motion to strike Sparkman's jury demand. *Id*. at *13. Sparkman timely filed the FAC, alleging the following claims for relief: 1) violation of the EFTA, 15 U.S.C. §§ 1693g(a), 1693g(b), and 1693f, on behalf of the EFTA subclass; 2) violation of the EFTA, 15 U.S.C. § 1693*l*, on behalf of the EFTA subclass; 3) breach of contract on behalf of the class; 4) breach of contract on behalf of the IVR surcharge subclass; 5) breach of the implied covenant of good faith and fair dealing on behalf of the class; 6) unlawful business practices in violation of the Unfair Competition Law ("UCL"), California Business & Professions Code section 17200 et seq., on behalf of the class; 7) unfair business practices in violation of the UCL on behalf of the class; and 8) unfair business practices in violation of the UCL on behalf of the IVR surcharge class and subclass.

Defendants now move to dismiss and/or strike claims 2-5 and claim 8 and portions of claims 6 and 7.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1). The challenging party may make a facial or factual attack challenging subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are

insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. at 1039. A factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242 (citation omitted). Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

### B. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

### III. DISCUSSION

#### A. Scope of Leave to Amend

Defendants argue that the court should dismiss or strike new allegations and claims in the

6

FAC that are not related to Sparkman's allegations that Defendants improperly denied her request for reimbursement for over $1,000 in unauthorized transactions. Specifically, they argue that Sparkman's "new, unrelated theories" and claims based on Defendants' charges for calls to the IVR line should be dismissed or stricken because they go beyond the scope of the court's August 4, 2023 Order granting Sparkman leave to amend. Mot. 6-7. According to Defendants, the court granted Sparkman leave to amend her "breach of contract claims based on the Terms of Use and claim for restitution" only, *id*. at 7 (quoting *Sparkman*, 2023 WL 5020269, at *14), and did not permit her "to add unrelated factual allegations and new theories of liability." *Id*. Defendants seek dismissal of claims 4 and 8 and the allegations supporting those claims. *See id*. at 7 & n.3.

The motion to dismiss on this ground is denied. The court granted Sparkman leave to amend specific claims but did not preclude her from adding new or additional claims or theories of liability. "[T]he Federal Rules call for liberal amendment of pleadings before trial," *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574-75 (9th Cir. 2020) (citation omitted), and "[c]ourts are free to grant a party leave to amend whenever 'justice so requires.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (quoting Fed. R. Civ. P. 15(a)(2)). Importantly, Sparkman had not previously amended her complaint. *See, e.g., Olsen v. Hortica Ins. Co.*, No. 5:21-CV-03891-EJD, 2023 WL 2277007, at *3 (N.D. Cal. Feb. 27, 2023) ("[d]ismissing Olsen's new claims on the basis that they exceeded the scope of leave to amend would frustrate the policy of liberal amendment because this is the first time Olsen has amended his complaint."). Moreover, Defendants do not explain how the addition of the new claims prejudices them. The case is in its early stages, with trial set to begin in March 2025. [*See* Docket No. 44.] Accordingly, the court denies Defendants' motion to dismiss the new claims and supporting allegations on the ground that they exceed the scope of the court's Order granting Sparkman leave to amend.

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### 1. Subject Matter Jurisdiction over Claims 4 and 8

Defendants argue that the court lacks subject matter jurisdiction over Sparkman's state law claims based on charges for calls to the IVR line, claims 4 and 8 (the "IVR claims"). Claim 4 is for breach of contract on behalf of the IVR surcharge subclass and claim 8 is for unfair business

7

1  practices in violation of the UCL on behalf of the IVR surcharge class and subclass. The court has
2  federal question jurisdiction over Sparkman's EFTA claims under 28 U.S.C. § 1331. Sparkman
3  alleges that jurisdiction over her state law claims is based on supplemental jurisdiction pursuant to
4  28 U.S.C. § 1367. FAC ¶¶ 6, 7.

5        28 U.S.C. § 1367(a) provides in relevant part that "in any civil action of which the district
6  courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all
7  other claims that are so related to claims in the action within such original jurisdiction that they
8  form part of the same case or controversy under Article III of the United States Constitution."
9  "A state law claim is part of the same case or controversy when it shares a 'common nucleus of
10 operative fact' with the federal claims and the state and federal claims would normally be tried
11 together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004). "Exactly how similar the
12 claims must be is not entirely clear." *Pac. Steel Grp. v. Com. Metals Co.*, 600 F. Supp. 3d 1056,
13 1079 (N.D. Cal. 2022). The Seventh Circuit has held that "a loose factual connection between
14 claims is generally sufficient to confer supplemental jurisdiction." *Prolite Bldg. Supply, LLC v.
15 MW Manufacturers, Inc.*, 891 F.3d 256, 258 (7th Cir. 2018) (cleaned up) (quoting *Ammerman v.
16 Sween*, 54 F.3d 423, 424 (7th Cir. 1995)). "[O]ther courts have recognized that the reference to a
17 'common nucleus' suggests a factual overlap that 'refers to something at the heart or center of the
18 subject in question, not to a matter that is peripheral or tangential[.]'" *Slack v. Int'l Union of
19 Operating Engineers*, No. C-13-5001 EMC, 2014 WL 4090383, at *8 (N.D. Cal. Aug. 19, 2014)
20 (quoting *Mason v. Richmond Motor Co, Inc.*, 625 F. Supp. 883, 886 (E.D. Va. 1986)). Courts
21 "look[ ] to the degree of overlap between the legal and factual issues necessary to resolve the
22 different claims." *Eastman v. Apple Inc.*, No. 18-CV-05929-JST, 2018 WL 5982440, at *3 (N.D.
23 Cal. Nov. 14, 2018) (citations omitted). Something more than "barely related" is required; as one
24 court has stated, "[u]ltimately, 'it is not sufficient that the federal and state claims are 'not
25 completely unrelated' to exercise supplemental jurisdiction.'" *Slack*, 2014 WL 4090383, at *8
26 (quoting *Ariba, Inc. v. Coupa Software Inc.*, No. 12-CV-01484-WHO, 2014 WL 1466860, at *3
27 (N.D. Cal. Apr. 15, 2014) (citing *Taiwan Semiconductor Mfg. Co. v. Semiconductor Mfg. Int'l
28 Corp.*, No. C-03-5761 MMC, 2004 WL 5212448, at *7 (N.D. Cal. Apr. 21, 2004) (declining to

exercise supplemental jurisdiction even though claims were "not completely unrelated")).

Here, Sparkman's EFTA claims are based on the allegations that Defendants wrongly place the burden of proof of establishing that Way2Go card transactions are unauthorized on cardholders and therefore improperly deny reimbursement of unauthorized charges. In contrast, the IVR claims challenge Defendants' practice of charging fees for calls to its IVR telephone system. The IVR claims are "related" in the sense that they involve alleged misconduct by Defendants connected to their provision of the Way2Go card, but "the test is not whether the state law claims are related to the federal claims" and it is not enough to "generally allege wrongdoing by the same or similar defendants." *Slack*, 2014 WL 4090383, at *10. Sparkman argues that one of her EFTA claims (claim 2) and her state law claims "all require interpretation of Defendants' single form contract," Opp'n 9, but the EFTA and IVR claims rest on different provisions of the Terms of Use. Moreover, she does not identify any overlap between the legal and factual issues necessary to resolve the claims.

The sole case Sparkman cites in support of the court exercising supplemental jurisdiction over the IVR claims is *Coleman v. Dish Network LLC*, No. LA CV17-02460 JAK (AFMx), 2017 WL 6888289, at *4-5 (C.D. Cal. Nov. 22, 2017), Opp'n 9, but that case is distinguishable. In *Coleman*, the plaintiff asserted a single claim for violation of the Telephone Consumer Protection Act ("TCPA"). The defendant brought a breach of contract counterclaim, alleging that the plaintiff had failed to pay the defendant amounts due under two agreements between the parties. 2017 WL 6888289, at *1. The defendant argued that supplemental jurisdiction over the counterclaim was proper because "pursuant to the Agreements, Plaintiff consented to being contacted by Defendant regarding her account." *Id*. at *3. The court held that the counterclaim and the TCPA claim "share at least a partial, but material, common nucleus of operative facts," reasoning that "[i]f Defendant can carry its burden of proof and establish that the Agreements are valid, and that through them Plaintiff consented to the [automatic telephone dialing system] calls at issue, it will constitute an effective and complete defense to the TCPA claim." *Id*. at *5. Accordingly, it concluded that "the Counterclaim and the TCPA claim share at least a partial, but material, common nucleus of operative facts." *Id*. In contrast, Sparkman does not identify any

9

common nucleus of operative facts between the EFTA and IVR claims. Accordingly, the court lacks supplemental jurisdiction over Sparkman's IVR claims 4 and 8. They are dismissed without prejudice.

### 2. Standing for Claim 2

Defendants next move to dismiss claim 2, violation of the EFTA, 15 U.S.C. § 1693*l*, for lack of subject matter jurisdiction on the ground that Sparkman has not alleged a concrete harm necessary to confer Article III standing.

Section 1693*l* provides in relevant part that "[n]o writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter. . . ." The FAC alleges that "the EFTA requires financial institutions 'to show that [an] electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability . . . have been met." FAC ¶ 70 (quoting 15 U.S.C. § 1693g(b)). Nonetheless, "Defendants' Terms of Use purport to allow Defendants to deny claims for unauthorized transactions when Defendants 'conclude that the facts do not reasonably support a claim of unauthorized use.'" Accordingly, the FAC alleges, the Terms of Use requires cardholders to waive their rights under 15 U.S.C. § 1693g(b)). *Id*. at ¶¶ 69, 71. Defendants argue that Sparkman has no standing to bring a claim under section 1693*l* because she has not alleged a concrete injury caused by the inclusion of language in the Terms of Use purporting to shift the burden of proof to Way2Go cardholders in the event of an unauthorized electronic fund transfer. Mot. 12.

Federal courts are courts of limited jurisdiction. Under Article III of the United States Constitution, federal courts are limited to deciding "cases" and "controversies." *See Bova v. City of Medford*, 564 F.3d 1093, 1095 (9th Cir. 2009). Article III standing "is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011). Article III standing requires three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

(2016) (citing *Lujan*, 504 U.S. at 560-61). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (citing *Lujan*, 504 U.S. at 560). While a concrete injury need not be tangible, "it must actually exist"; that is, it must be "real, and not abstract." *Id*. at 340 (quotation marks and citation omitted). "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). Recent Supreme Court decisions have clarified what constitutes a "concrete" injury for purposes of Article III standing. In *Spokeo*, the Court held that "Article III standing requires a concrete injury even in the context of a statutory violation"; an allegation of "a bare procedural violation, divorced from any concrete harm," does not satisfy the injury in fact requirement of Article III. 578 U.S. at 341.

The parties dispute whether Sparkman has alleged a "concrete" injury in fact; causation and redressability are not at issue.

Here, claim 2 alleges that "Defendants' Terms of Use . . . require consumers to waive" their rights section 1693g(b), which results in a violation of section 1693*l*. FAC ¶ 71. Section 1693g(a) limits consumer liability for unauthorized electronic fund transfers to either $50 or the amount of money or value lost through unauthorized electronic fund transfers prior to the consumer notifying the financial institution.[3] Section 1693g(b) requires financial institutions to

---

[3] 15 U.S.C. § 1693g(a) states in relevant part:

**(a) Unauthorized electronic fund transfers; limit**

A consumer shall be liable for any unauthorized electronic fund transfer involving the account of such consumer only if the card or other means of access utilized for such transfer was an accepted card or other [means] of access and if the issuer of such card, code, or other means of access has provided a means whereby the user of such card, code, or other means of access can be identified as the person authorized to use it . . . [i]n no event, however, shall a consumer's liability for an unauthorized transfer exceed the lesser of—

(1) $50; or

(2) the amount of money or value of property or services obtained in such unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving

11

bear the burden of proof of establishing that a transaction was authorized, as follows:

> **(b) Burden of proof**
> In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability set forth in subsection (a) have been met . . . .

15 U.S.C. § 1693g(b).

Claim 1, which is not at issue in this motion, alleges that Defendants violate section 1693g(b) by "explicitly revers[ing]" the burden of proof on financial institutions to establish that transactions are authorized, "regularly denying claims on grounds that they 'cannot confirm that fraud occurred' or found 'conflicting information.'" FAC ¶ 63. Claim 1 alleges that Sparkman notified Defendants of the theft of her Way2Go card within two days and disputed unauthorized transactions totaling more than $1,000, and that Defendants denied her claim for reimbursement based on a "conflict in the information provided by [Sparkman] and the information resulting from [Defendants'] research" stating "we cannot confirm that fraud occurred." *See id*. at ¶¶ 19-20, 24, 31.[4]

In contrast, claim 2 is based on the allegation that "Defendants' Terms of Use . . . require consumers to waive" their rights under 15 U.S.C. § 1693g(b) because the Terms of Use "purport to allow Defendants to deny claims for unauthorized transactions" without showing that transactions are authorized "and therefore violate [section 1693*l* of] the EFTA." FAC ¶¶ 69-71. Defendants argue that the FAC does not identify any concrete injury caused solely by the inclusion of the challenged provision in the Terms of Use. This misapprehends the basis for claim 2. Sparkman explains that "Defendants applied the allegedly impermissible Terms of Use when they denied Ms. Sparkman's request for reimbursement of over $1,000 to which she was otherwise entitled," which "satisfies Article III standing" for claim 2. Opp'n 10. The FAC does

---

the consumer's account has been or may be effected. . . .

[4] The court previously denied Defendants' motion to dismiss claim 1, holding that these allegations were sufficient to state a claim for violation of section 1693g(a) and (b). *See Sparkman*, 2023 WL 5020269, at *10.

not explicitly allege that Defendants relied on the challenged provision of the Terms of Use in denying her claim for reimbursement, (*see* Reply 9), but claim 2 "incorporates by reference all preceding allegations." FAC ¶ 67. Plaintiff alleges that Defendants violated the EFTA by denying Sparkman's claim for reimbursement on the basis that they "cannot confirm that fraud occurred" or found "conflicting information." *See id*. at ¶¶ 31, 60-64. The challenged Terms of Use provision states that Defendants may refuse to reimburse a cardholder for an alleged unauthorized transaction if Defendants "conclude that the facts do not reasonably support a claim of unauthorized use." It is reasonable to infer that Defendants applied the challenged Terms of Use provision when they denied Sparkman's claim. *See Iqbal*, 556 U.S. at 678. Though unartfully pleaded, the FAC fairly alleges that Defendants' Terms of Use provision, which allegedly unlawfully waives consumers' rights under 15 U.S.C. § 1693g(b) in violation of 15 U.S.C. § 1693*l*, caused Sparkman's loss of over $1,000 in unauthorized charges on her Way2Go card for which Defendants denied reimbursement. Therefore, claim 2 does not allege "a bare procedural violation, divorced from any concrete harm." *See Spokeo*, 578 U.S. at 341. Defendants' motion to dismiss this claim for lack of standing is denied.

### C. Failure to State a Claim

#### 3. Breach of Contract, Claim 3

Claim 3 is for breach of contract. The FAC alleges that Defendants breached Way2Go's informational sheet, which promised "that, under 'Mastercard's Zero Liability Protection,' Ms. Sparkman and members of the Class would 'not lose any funds if your Card is lost or stolen.'" FAC ¶¶ 15, 74. It alleges that Defendants breached this promise "by failing to reimburse California Way2Go card holders for unauthorized transactions and denying valid claims on the basis of unidentified 'conflicting' information." *Id*. at ¶ 76.

The elements for breach of contract under California law are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Defendants move to dismiss this claim on the ground that the informational sheet does not

United States District Court
Northern District of California

1  contradict Section 10 of the Terms of Use, which permits Defendants to determine whether a card
2  is lost or stolen. Mot. 14. According to Defendants, the breach of contract claim based on the
3  informational sheet "can stand only if the Court ignores that the Terms of Use permits Defendants
4  to deny claims of unauthorized transactions where Defendants 'conclude that the facts do not
5  reasonably support a claim of unauthorized use.'" *Id*. (citing Terms of Use § 10). They contend
6  that the court must consider both the informational sheet and the Terms of Use "collectively,"
7  citing California Civil Code section 1642. *Id*. That provision states, "[s]everal contracts relating
8  to the same matters, between the same parties, and made as parts of substantially one transaction,
9  are to be taken together." Cal. Civ. Code § 1642.

Defendants' argument in favor of dismissal of this claim rests entirely on the contention that the Terms of Use limits or modifies the promise in the informational sheet. Mot. 14-15. This argument is premature. The informational sheet is not attached to the FAC and is not part of the record. Moreover, there are no allegations in the FAC about how the informational sheet and Terms of Use were presented to Sparkman and other cardholders. Accordingly, it is not clear that the informational sheet and Terms of Use were part of "substantially one transaction" and must be "taken together" under California Civil Code section 1642. The motion to dismiss the breach of contract claim is denied.

### 4. Restitution Claims

The FAC requests restitution in connection with the UCL claims, claims 6 and 7. FAC ¶¶ 105, 110. The court previously dismissed the complaint's claims for restitution because it failed to allege that the funds Sparkman lost through third party fraud were taken by Defendants:

> In *Kanji v. Bank of Am., N.A.*, No. CV 20-3820-RSWL-SK, 2020 WL 8175548, at *7 (C.D. Cal. Aug. 25, 2020), the plaintiff's UCL claim sought restitution of the amount allegedly stolen from her bank account by cybercriminals. The court held that in order to establish entitlement to restitution under the UCL, the plaintiff was required to show "(1) that she had at one time 'an ownership interest' in the money or property she 'lost' and (2) that money or property must have been 'acquired' by the defendant." *Id.* (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011)). It concluded that the plaintiff failed to state a UCL claim because she failed to allege that the defendant bank "'acquired' the money that she 'lost'" since she affirmatively alleged that the cybercriminals took the money. *Id.* (citing *Lusinyan v. Bank of Am., N.A.*, No. CV-14-9586 DMG (JCX),

14

> 2015 WL 12777225, at *5 (C.D. Cal. May 26, 2015) (dismissing UCL claim for restitution where plaintiffs did not allege that the defendant acquired or currently possessed the money plaintiffs lost)). Sparkman does not address this authority or Defendants' argument that she may not request restitution under her UCL claims. Accordingly, her claim for restitution is dismissed with leave to amend.

*Sparkman*, 2023 WL 5020269, at *12.

The FAC adds the allegations that Defendants improperly retained "the amounts above $50 or $500 Defendants would have used to reimburse Ms. Sparkman and the Class for unauthorized transfers if Defendants had complied with the EFTA and their contractual obligations" and that "Ms. Sparkman and the Class have a legally protected and vested interest in these amounts." FAC ¶¶ 105, 110. "[A]n order for restitution is one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property[.]'" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). "In order to establish an entitlement to restitution under the UCL, a plaintiff must show: (1) that she had at one time 'an ownership interest' in the money or property she 'lost' and (2) that money or property must have been 'acquired' by the defendant." *Kanji*, 2020 WL 8175548, at *7 (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011)).

Here, the FAC does not allege that Defendants "acquired" money that Sparkman lost due to third party fraud. Presumably, the third party kept the money it stole. Instead, the FAC alleges that Defendants failed to cover Sparkman's loss by reimbursing her from their own funds. Sparkman does not offer any authority that Defendants' retention of money they would have used to cover her loss is equivalent to Defendants' acquisition of money that belonged to Sparkman. Nor does she distinguish *Kanji* or *Lusinyan*, which involved claims that banks refused to reimburse the plaintiffs for losses resulting from third parties stealing money from their accounts. *See Kanji*, 2020 WL 8175548, at *7 ("Plaintiff fails to allege that Defendant 'acquired' the money that she 'lost.' In fact, Plaintiff affirmatively states that the '[C]ybercriminals accessed [Plaintiff]'s four accounts . . . and transferred hundreds of thousands of dollars out."); *Lusinyan*, 2015 WL 12777225, at *5 ("Based on the facts alleged in the Complaint, Bank of America did not acquire and currently does not possess the money Plaintiffs lost—USMR has the money.").

15

1  Accordingly, the FAC fails to state a claim for restitution. The restitution claims are dismissed. As Sparkman has already been given the opportunity to amend the complaint to state claims for restitution, the dismissal is with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part, as follows: the motion to dismiss claim 2, violation of 15 U.S.C. § 1693*l*, is denied. The motion to dismiss claim 3 for breach of contract is denied. Claims 4 and 8 on behalf of the IVR class and subclass are dismissed without prejudice for lack of subject matter jurisdiction. Sparkman's claims for restitution in connection with claims 6 and 7 (the remaining UCL claims) are dismissed with prejudice. Defendants' answer is due within 28 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: December 21, 2023



Donna M. Ryu
Chief Magistrate Judge